AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
September 2, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MR___ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
9/2/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

United States of America

v.

OMAR ALEXANDER CARDENAS,

Defendant(s)

Case No.   2:21-mj-04107-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 2, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1073 | Unlawful Flight to Avoid Prosecution |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Michael E. Alker*
Complainant's signature

Michael E. Alker, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   9/2/2021

*[Judge's signature]*
Judge's signature

City and state:   Los Angeles, California

Hon. Pedro V. Castillo
Printed name and title

**AFFIDAVIT**

I, Michael E. Alker, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for defendant OMAR ALEXANDER CARDENAS ("CARDENAS") for Unlawful Flight to Avoid Prosecution, in violation of Title 18, United States Code, Section 1073.

2. The information contained herein is based on my participation in this investigation and my training and experience, as well as my conversations with other law enforcement officers and my review of various law enforcement documents. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AGENT MICHAEL E. ALKER

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over 13 years. I have been a member of the joint FBI/Los Angeles Police Department ("LAPD") Fugitive Task Force for approximately five years. I have extensive experience in conducting fugitive investigations. In that capacity, I have conducted hundreds of fugitive investigations, have personally participated in several

hundred fugitive arrests, and have been responsible for the arrests of several fugitives across the United States and abroad.

4. From 2009 until 2013, I investigated national security matters and international terrorism. From 2013 to 2016, I was assigned to the Southern California Drug Task Force/High Intensity Drug Trafficking Area ("SCDTF/HIDTA") in Los Angeles, California and the Los Angeles Strike Force DEA SWB1/FBI CE-1 ("LASF"). The SCDTF/HIDTA and LASF conduct major narcotics investigations and are comprised of Special Agents from the FBI, DEA, DHS, IRS, and local law enforcement personnel designated as TFOs.

5. Based upon my experience and training with the FBI as well as conversations that I have had with other, more experienced agents and law enforcement officers who specialize in fugitive investigations, I am familiar with the methods utilized by fugitives to avoid detection and capture by law enforcement. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. Through my conversations with these agents and other law enforcement officers, coupled with my investigation of narcotics traffickers avoiding detection by law enforcement, I am knowledgeable in the methods and modes of fugitives to include the techniques, tactics and procedures they employ to avoid arrest.

### III. STATEMENT OF PROBABLE CAUSE

6.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following.

7.   On or about April 7, I spoke with LAPD Homicide Detective Edwin Ayala ("Detective Ayala") who relayed to me the following details regarding a homicide case:

   a.   On April 3, 2020, the Superior Court of California, County of Los Angeles, issued a felony arrest warrant, case number LASPA09446701, charging CARDENAS with Murder, in violation of California Penal Code section 187(A). The warrant is a full extradition warrant, and the District Attorney has agreed to fund all costs associated with the extradition of CARDENAS to California to stand trial.

8.   Detective Ayala also relayed to me the following information about the homicide investigation:

   a.   On August 15, 2019, at approximately 4:20 p.m., LAPD officers responded to a report of a shooting in the vicinity of a shopping center on Foothill Boulevard, Sylmar, CA. When the officers arrived at the scene, they saw an African-American male, subsequently identified as J.D., who was suffering from a gunshot wound to the head. After discovering the victim, officers requested paramedics who transported J.D. to Holy Cross Medical Center in Mission Hills, CA. J.D. ultimately passed away from his injuries. Based on the nature of J.D.'s gunshot wound and witness statements, LAPD initiated a homicide investigation.

b. During the homicide investigation, Detective Ayala obtained statements from three witnesses who described a light-skinned heavy-set Hispanic male wearing a long-sleeved black sweatshirt, and grey pants. All the witnesses observed this individual during or immediately after numerous shots were fired in the direction of where J.D. was found before fleeing the area. One witness added that the Hispanic male had prescription-type glasses.

c. Detective Ayala obtained surveillance video from the shopping center where the shooting occurred and identified a heavy-set male Hispanic wearing prescription glasses and a black top in the vicinity of the shopping center both before and after the shooting.

d. Detective Ayala researched 9-1-1 calls in the area on the day of the murder and identified a call regarding a hit and run that occurred on August 15, 2019, at 2:03 p.m., approximately two hours before the shooting. The witness described the driver of a 2016-2017 Black Toyota Camry, California license plate of 7VLA792 (the "Camry"), that was involved in the hit and run as a heavy-set male Hispanic with prescription-type glasses and a black top. Detective Ayala showed a screen shot of the surveillance video obtained from the shopping center to the 9-1-1 caller. The caller identified the person in the picture as the driver of the Camry and the individual involved in the hit and run.

e. Another witness observed a heavy-set male Hispanic get into a black car on Adelphia Avenue, near the

4

shopping center immediately after the shooting of victim J.D. The witness stated the male Hispanic was walking fast and holding his waistband. Detective Ayala showed this witness a screen shot of surveillance video obtained from the shopping center and the witness identified the individual as the same person they saw leaving the scene of the shooting.

   f. On August 18, 2019, Detective Ayala obtained additional surveillance video footage of the shopping center where the murder took place. The camera that covers the driveway of the shopping center shows the Camry enter the shopping center 13 minutes before the shooting took place. The driver of the Camry appears to be a heavy-set male with dark hair.

   g. A query of the California Department of Motor Vehicles Database shows that the Camry is registered to H.S., who resides on Hoyt Street in Lake View Terrace, CA. Detective Ayala determined that H.S. had multiple children including CARDENAS. A query of the California Driver's License Photographic database regarding CARDENAS revealed a driver's license photo of a heavy-set male Hispanic who matched the description given by multiple witnesses of the shooter. While researching CARDENAS family members, Detective Ayala ran the criminal history of the brother of CARDENAS. Detective Ayala found an arrest report for CARDENAS' brother involving an incident on May 10, 2018 during which CARDENAS' brother walked into the same shopping center where the murder occurred and threatened to shoot the occupants of the business.

       h.  On August 16, 2019, LAPD Officers observed a heavy-set male Hispanic matching the description of CARDENAS being dropped off at a residence on Hoyt Street in Sylmar, CA. From August 17, 2019 to October 2, 2019, repeated surveillance was conducted at the Hoyt Street residence; however, CARDENAS was not seen again.

       i.  On October 3, 2019, LAPD detectives and officers served a search warrant at the residence of CARDENAS; however, CARDENAS appeared to have fled and was not located. During the service of the search warrant, Detective Ayala showed the screen shot of the surveillance video that had been shown to multiple witnesses to CARDENAS' mother, father, and sister, all of whom identified the person in the photo as CARDENAS. Additionally, the Camry was located in the back yard of the property with fresh body work in the areas consistent with those described by witnesses of the hit and run accident that occurred on August 15, 2019.

9.  Following the service of the search warrant, a search for CARDENAS was conducted by the LAPD; however, CARDENAS could not be located.

10.  From April 2020 to June 2021, the FBI and LAPD conducted an exhaustive joint investigation to locate CARDENAS; however, CARDENAS could not be found.

11.  On June 18, 2021, Detective Ayala received information from a tipster that CARDENAS had fled the state. The tipster, who is a former member of the same gang as that of CARDENAS, was

informed by members of the gang that CARDENAS had left California to stay with family in Arizona.

12. While the exact time CARDENAS fled California is unknown, based on the foregoing information, it appears CARDENAS fled in the days following the murder.

## IV. CONCLUSION

13. For all the reasons described above, there is probable cause to believe that CARDENAS has violated Title 18, United States Code, Section 1073: Unlawful Flight to Avoid Prosecution.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __2__ day of
September, 2021.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE